1  Alan Himmelfarb- SBN 90480
   Michael J. Aschenbrener (*admitted pro hac vice*)
2  KAMBEREDELSON, LLC
   2757 Leonis Boulevard
   Los Angeles, California 90058
3  t: 323.585.8696
   f: 323.585.6195
4  ahimmelfarb@kamberedelson.com

5  JOSEPH H. MALLEY (*admitted pro hac vice*)
   Law Office of Joseph H. Malley, PC
6  1045 North Zang Boulevard
   Dallas, TX 75208
7  214-943-6100
   malleylaw@gmail.com

8  *Attorneys for Plaintiff*
   SUSAN SIMON and the putative class
9

10              **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12              **SAN FRANCISCO DIVISION**

13

14  SUSAN SIMON, individually, on behalf of
    herself and all others similarly situated,
15                                                    Case No.: C09-00879-MMC
            Plaintiffs,
16
        v.                                            **PLAINTIFF'S NOTICE OF MOTION AND**
17                                                    **MOTION FOR LEAVE TO CONDUCT**
    ADZILLA, INC.; CONDUCIVE                          **JURSIDICTIONAL DISCOVERY;**
18  CORPORATION; CONTINENTAL VISINET                  **MEMORANDUM IN SUPPORT**
    BROADBAND, INC.; CORE
19  COMMUNICATIONS, INC. d/b/a CORETEL                Date:     July 31, 2009
    COMMUNICATIONS, INC. et al.                       Time:     9:00 a.m.
20                                                    Judge:    The Hon. Maxine M. Chesney
            Defendants.
21

22

23

24

25

26

27

28  Plaintiff's Motion for Leave to Conduct Jurisdictional          Case No. 3:09-cv-879-MMC
    Discovery

Dockets.Justia.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

NOTICE IS HEREBY GIVEN that Plaintiff will move the Court, pursuant to Federal Rules of Civil Procedure 26(b)(1) and 26(d), for the entry of an order permitting Plaintiff to engage in discovery for the limited purpose of discerning whether the Court may exercise personal jurisdiction over defendant Core Communications, Inc. d/b/a CoreTel Communications, Inc. ("CoreTel"), on July 31, 2009 at 9:00 a.m., or at such other time as may be set by the Court, located at 450 Golden Gate Avenue, San Francisco, California, before the Hon. Maxine M. Chesney, Courtroom 7, 19th Floor.

Plaintiff seeks leave to conduct immediate jurisdictional discovery and to stay the CoreTel Motion to Dismiss until the Court rules on the instant motion. The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities in Support of the Motion, and the authorities cited therein, oral argument of counsel, and any other matter that may be submitted at the hearing.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Plaintiff may conduct jurisdictional discovery of defendant Core Communications, Inc. and Adzilla, Inc. (New Media).

2.      Whether the CoreTel Motion to Dismiss should be stayed pending completion of jurisdictional discovery.

Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery

Case No. 3:09-cv-879-MMC

1

**TABLE OF CONTENTS**

2    **TABLE OF AUTHORITIES**.................................................................i

3    **INTRODUCTION** ......................................................................... 1

4    **STATEMENT OF FACTS** ............................................................. 2

5    **LEGAL STANDARD** ................................................................... 3

6    **ARGUMENT** ............................................................................... 4

7   **I.**    **JURISDICTIONAL DISCOVERY IS NECESSARY FOR PLAINTIFF TO**

8       **RESPOND PROPERLY TO CORETEL'S MOTION TO DISMISS.**........................ 4

9      **A. This Court possesses jurisdiction to determine whether it may exercise personal**

10        **jurisdiction over CoreTel.**................................................................ 4

11      **B. CoreTel has introduced a jurisdictional dispute that demands**

12        **immediate resolution.** ................................................................. 5

13      **C. Jurisdictional Discovery will allow Plaintiff to resolve this matter.** ...................... 6

14   **II.**    **IF JURISDICTIONAL DISCOVERY VALIDATES PLAINTIFF'S CLAIMS, THEN**

15       **THIS COURT WILL BE ABLE TO EXERCISE PERSONAL JURISDICTION**

16       **OVER CORETEL.**........................................................................ 7

17      **A. CoreTel has established sufficient "minimum contacts" for this Court to exercise**

18        **specific jurisdiction.** ................................................................. 7

19      **B. By engaging in DPI with Adzilla in California, CoreTel has purposefully availed**

20        **itself of California law.** ................................................................. 7

21      **C. CoreTel purposefully directed conduct to California.**......................... 9

22      **D. Plaintiff's claims arise out of CoreTel's forum-related activities.** ........................ 11

23         1.   *CoreTel purposefully interjected itself into California.* ........................... 12

24         2.   *CoreTel faces no burden litigating in California.*................................... 13

25         3.   *No Conflicts with Other Sovereigns.* ........................................... 14

26         4.   *California's interest in adjudicating this matter is strong.* ...................... 14

27         5.   *California offers the most efficient judicial resolution.* ........................... 15

28

Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery        Case No. 3:09-cv-879-MMC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

6. *Maintaining litigation outside California would greatly burden Plaintiff.* ...................................................................... 16

7. *No alternative forum.* ................................................................ 16

**CONCLUSION** ........................................................................................ 17

1

**TABLE OF AUTHORITIES**

2

**United States Supreme Court Cases:**

3   *Burger King v. Rudzewicz*, 471 U.S. 462 (1985) .................................................... 7, 9, 12

4   *Calder v. Jones*, 465 U.S. 783, 788-90 (1984) .............................................................. 10-11

5   *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945) ............................................ 7

6   *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-75 (1984) ............................... 10

7   *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) ............................................. 9

8   *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ................................ 5

9   *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980) ................ 10

10  **United States Courts of Appeals Cases:**

11  *America West Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989) .................. 5

12  *Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) ................................................ 8-9

13  *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128-29 (9th Cir. 1995) ............ 13

14  *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993) ................ 12

15  *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001) ..................................................... 7

16  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 111 (9th Cir. 2002) ............................ 7

17  *K-Swiss Inc. v. GTFM, Inc.*  278 Fed. Appx. 772, 773 (9th Cir. 2008) ...................... 5

18  *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987) .................................................... 7

19  *Laub v. U.S. DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003) ............................................ 3, 4

20  *Pacific Atlantic Trading, Co. v. M/V Main Express (Pacific)*, 758 F.2d 1325, 1331

21      (9th Cir. 1985) ...................................................................................................... 15

22  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) .................... 13, 15

23  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006) ...................................... 7

24  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ................ 7, 8, 10

25  *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) .............................................. 13

26  *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191 (9th Cir. 1988) ............................ 12, 16

27  *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977) .... 3, 4, 5

28

*Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206, 1207 (9th Cir. 2006) ....... 8, 11

**United States District Court Cases:**

*MMCA Group, Ltd. v. Hewlett-Packard Co*., No. C-06-7067 MMC (EMC), 2007 WL 1342586
      (N.D. Cal. May 8, 2007) (J. Chen) .................................................................................. 3

**California Appellate Court Cases:**

*Seagate Technology v. A.J. Kogyo Co*., 219 Cal. App. 3d 696, 703 (Ct. App. 1990).................. 12

*Taylor-Rush v. Multitech Corp*., 217 Cal. App. 3d 103, 118 (Ct. App. 1990)............................. 12

**Federal Statutes**

Electronic Communications Privacy Act, 18 U.S.C. § 2510 ................................................... 2, 12

Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ............................................................... 2, 12

**California Statutes**

California Invasion of Privacy Act, Cal. Penal Code § 631 ................................................ 2, 12, 14

California Computer Crime Law, Cal. Penal Code § 502 ...................................................... 2, 12

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

3    In June of 2007, Plaintiff Susan Simon ("Plaintiff" or "Ms. Simon") discovered that her

4  internet communications were being tapped.  Specifically, an entity entirely unknown to the

5  plaintiff was observing, monitoring, and recording her every keystroke, browsing activity, and

6  movement on the internet.  No permission had been requested, and no notice had been provided.

7  Only because Plaintiff was highly computer literate was she even able to discover that this

8  unauthorized and unwarranted tapping of her communications was even occurring.  The device

9  that was doing the intercepting was something called a "Zillacaster," manufactured by a company

10  called Adzilla.  The device was a "transparent proxy" – meaning it was *designed* to intercept

11  communications and be invisible to the user being monitored.

12    Plaintiff's connection to the internet—the connection that was being monitored—was

13  provided by defendant Continental Visinet, which, in order to provide internet service to its

14  customers, had purchased wholesale internet access from CoreTel Communications ("CoreTel"),

15  the party that has brought the instant Motion to Dismiss.

16    CoreTel's motion to dismiss is predicted upon an assertion of lack of personal jurisdiction.

17  In support of its motion, CoreTel has submitted a declaration from its President, Brett L. Mingo,

18  which (1) details CoreTel's limited contacts with California, (2) details CoreTel's limited

19  involvement with Adzilla (the company that provided the device that did the wiretapping of the

20  plaintiff's internet account), and (3) asserts that all contacts and communications with Adzilla took

21  place via and through Adzilla's Canadian location.

22    Plaintiff's complaint alleges substantial and detailed grounds for the proper exercise of

23  jurisdiction of this matter in California.  *See*, Complaint, ¶¶ 73-83.  The thrust of the allegations in

24  Plaintiff's Complaint is <u>not</u> that CoreTel provided services for ISP customers in California, as

25  CoreTel's motion takes great pains to disavow.  Rather, the basis for California jurisdiction lies in

26  the fact that the specific activities that comprise the violations alleged in the Complaint—the

27  processing and analysis of the wiretapped data, the storage and alteration of that data, the

28  Plaintiff's Motion for Leave to Conduct Jurisdictional        1              Case No. 3:09-cv-879-MMC
Discovery

1   transmission of the data, and, most importantly, the profiting and monetizing of the entire

2   wiretapping scheme—*all took place in and were coordinated in and from California*.

3          By this motion, Plaintiff seeks leave to conduct jurisdictional discovery to ascertain the

4   extent of CoreTel's knowledge, participation, and/or profit from the scheme—a scheme that

5   plaintiff alleges was implemented, orchestrated, and overseen from California—to tap the internet

6   communications of unsuspecting internet users for profit.

7          Plaintiff seeks leave to conduct limited discovery so that she can demonstrate that this

8   Court may properly exercise personal jurisdiction over CoreTel.

9                                    **STATEMENT OF FACTS**

10         On February 27, 2009, Plaintiff Susan Simon ("Plaintiff" or "Ms. Simon") filed the present

11  class action complaint alleging violations of the federal Electronic Communications Privacy Act

12  ("ECPA") and Computer Fraud and Abuse Act ("CFAA"), as well as state law claims under the

13  California Invasion of Privacy Act ("CIPA") and California Computer Crime Law ("CCCL"),

14  among other claims against Adzilla, Inc. [New Media] ("Adzilla"), Conducive Corp.

15  ("Conducive"), Continental Visinet Broadband, Inc. ("Continental"), and Core Communications,

16  Inc., d/b/a CoreTel Communications, Inc. ("CoreTel").  (Complaint, Dkt. 1).

17         Plaintiff alleges that Adzilla is a California-based online advertising company.  (Compl.

18  ¶¶ 10, 18).  Defendant Conducive is or was the parent company of Adzilla and is headquartered in

19  New York.  (Compl. ¶¶ 9, 17).  CoreTel is a competitive local exchange carrier ("CLEC") based in

20  Maryland (Compl. ¶¶ 2, 20) while Continental is an internet service provider ("ISP") based in

21  Virginia (Compl. ¶¶ 2, 19).  Plaintiff Susan Simon is a citizen of Virginia and customer of

22  Continental.  (¶ 16).

23         The basis of Plaintiff's complaint is that Adzilla contracted with CLECs and ISPs to

24  monitor and intercept—without notice or consent—the online communications of CLEC and ISP

25  customers using an intrusive and invidious technology known as Deep Packet Inspection ("DPI").

26  (Compl. ¶¶ 84-88).  By utilizing DPI, Defendants are able to examine every search term entered,

27  every item viewed, every email sent, every credit card number entered—in short, every click the

28

1    users of ISP Defendants make online.  (Compl. ¶ 88).  To do so, Adzilla installed devices directly

2    in the data hubs of CLECs and ISPs (Compl. ¶ 57), which then transmitted all of the collected data

3    to Adzilla's headquarters in California (Compl. ¶ 73).

4         CoreTel filed its Rule 12(b)(2) motion to dismiss on May 29, 2009 (Dkt. 32), which is

5    based on the premise that this Court lacks personal jurisdiction over it.  As alleged, CoreTel is not

6    a citizen of California, but Plaintiff alleges that substantially all of the wrongdoing in this matter

7    occurred in California, thus providing the Court with personal jurisdiction over all defendants.

8    (Compl. ¶¶ 73-83).

9         The crux of CoreTel's jurisdictional argument is that it does not do any business or

10   maintain any contacts in California, thus it is not subject to personal jurisdiction in California

11   courts.  (Mtn. to Dismiss, p. 1, lines 15-22).  But as alleged, CoreTel transmitted or facilitated the

12   transmission of its customers' Personal Information in and out of California where the intercepted

13   data was analyzed and monetized to the benefit of CoreTel.  (Compl. ¶¶ 73-83).  Additionally,

14   upon information and belief, all class members communicated with websites based in California,

15   meaning that the communications of California citizens were subject to the same interceptions.

16   (Compl. ¶ 79).  As a result, CoreTel has created a jurisdictional issue—whether it availed itself of

17   the benefits and protections of California law by engaging in revenue-generating electronic

18   activities in California—that requires immediate discovery to resolve.

19                              **LEGAL STANDARD**

20        The Court is "vested with broad discretion to permit or deny [jurisdictional] discovery."

21   *Laub v. U.S. DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003).  But "[j]urisdictional discovery should

22   ordinarily be granted where jurisdictional facts are contested or more facts are needed."  *MMCA*

23   *Group, Ltd. v. Hewlett-Packard Co.*, No. C-06-7067 MMC (EMC), 2007 WL 1342586, *4 (N.D.

24   Cal. May 8, 2007) (citing *Laub*, 342 F.3d at 1093) and *Wells Fargo & Co. v. Wells Fargo Express*

25   *Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977)).

26        More specifically, jurisdictional discovery "should be granted where pertinent facts

27   bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing

28

1   of the facts is necessary." *Wells Fargo*, 556 F.2d at 430 n. 24 (internal quotation marks omitted).

2   Only when "it is clear that further discovery would not demonstrate facts sufficient to constitute a

3   basis for jurisdiction" should the Court deny a request for jurisdictional discovery; at minimum,

4   Plaintiff must supply "at least an arguable claim" of jurisdiction. *Laub*, 342 F.3d at 1093 (internal

5   quotation marks omitted).

6                                   **ARGUMENT**

7          Plaintiff's goal is clear: to gain leave to conduct jurisdictional discovery in order to

8   demonstrate that this Court may exercise personal jurisdiction over defendant CoreTel. Plaintiff's

9   burden is equally clear: demonstrate that either "pertinent facts bearing on the question of

10  jurisdiction are controverted" or that "a more satisfactory showing of the [jurisdictional] facts is

11  necessary." *Wells Fargo*, 556 F.2d at 430 n. 24 (internal quotation marks omitted).  Both factors

12  are present here.

13         To meet her burden, Plaintiff will focus on issues relating to specific jurisdiction, including

14  how Plaintiff can satisfy the three-prong test for specific jurisdiction that CoreTel cited in its

15  Motion to Dismiss.

16  **I.      JURISDICTIONAL DISCOVERY IS NECESSARY FOR PLAINTIFF TO**

17  **          RESPOND PROPERLY TO CORETEL'S MOTION TO DISMISS.**

18         **A.      This Court possesses jurisdiction to determine whether it may exercise**

19  **                 personal jurisdiction over CoreTel.**

20         The threshold issue for this Court to determine given it faces a jurisdictional dispute is

21  whether it possesses the jurisdiction necessary to rule on Plaintiff's present motion.  Fortunately,

22  the Ninth Circuit has spoken clearly and explicitly to this matter: "a trial court does have

23  jurisdiction to determine its own jurisdiction." *Id*. "And it is clear that a court may allow

24  discovery to aid in determining whether it has *in personam* or subject matter jurisdiction." *Id*.

25  (citing *Ziegler Chem. & Mineral Corp. v. Standard Oil Co. of Cal*., 32 F.R.D. 241, 243 (N.D. Cal.

26  1962)).

27

28

1    Furthermore, failing to allow jurisdictional discovery may constitute reversible error.  In

2    *K-Swiss Inc. v. GTFM, Inc.*  278 Fed. Appx. 772, 773 (9th Cir. 2008), the district court failed to

3    grant or deny K-Swiss's motion for jurisdictional discovery.  Instead, it simply granted the

4    defendant's motion to dismiss without allowing K-Swiss to conduct jurisdictional discovery.  *Id*.

5    As a result, the Ninth Circuit reversed and remanded and directed the district to allow K-Swiss

6    conduct for jurisdictional discovery.  *Id*.

7        **B.      CoreTel has introduced a jurisdictional dispute that demands**

8                  **immediate resolution.**

9        CoreTel argues that it is not subject to this Court's exercise of personal jurisdiction over it

10   because, as it states, it does not conduct substantial business in California.  But Plaintiff's

11   allegations demonstrate that CoreTel actually does conduct business in California via its

12   relationship with Adzilla sufficient for this Court to exercise specific jurisdiction over it.  Because

13   of this dispute, Plaintiff needs to conduct immediate jurisdictional discovery in order to resolve

14   this matter and adequately respond to CoreTel's Motion to Dismiss.

15       Although discovery is generally not permitted before the parties have conferred pursuant to

16   Rule 26(f) of the Federal Rules of Civil Procedure, Rule 26(d) provides that parties may be

17   permitted to engage in discovery before that time when authorized by the rules or by court order.

18   Fed. R. Civ. P. 26(d).  In accordance, Rule 26(b)(1) provides that "[p]arties may obtain discovery

19   regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R.

20   Civ. P. 26(b)(1).  Accordingly, the court may order discovery on jurisdictional issues.

21   *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Such discovery is available to

22   ascertain facts bearing on issues of jurisdiction.  *Id*. at 350-51.  "Where pertinent facts bearing on

23   the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts

24   is necessary courts should allow for discovery."  *Wells Fargo*, 556 F.2d at 430 (internal quotation

25   marks omitted); *America West Airlines, Inc. v. GPA Group, Ltd*., 877 F.2d 793, 801 (9th Cir.

26   1989).

27

28   Plaintiff's Motion for Leave to Conduct Jurisdictional          5                    Case No. 3:09-cv-879-MMC
     Discovery

Jurisdictional discovery is necessary to resolve the jurisdictional issues raised in CoreTel's Motion to Dismiss.  Upon information and belief, CoreTel has availed itself of the benefits and protections of California laws by way of activities related to its business relationships with co-Defendant Adzilla, such that this Court may exercise personal jurisdiction over CoreTel.  Therefore, at minimum, there are questions regarding the details of CoreTel's relationship with Adzilla that impacts whether this Court may exercise personal jurisdiction over it.

**C.    Jurisdictional Discovery will allow Plaintiff to resolve this matter.**

Allowing immediate jurisdictional discovery will allow Plaintiff the opportunity to obtain all information necessary to resolve the parties' jurisdictional dispute.  Among other telling items Plaintiff may obtain through discovery (and without limiting access to additional items), Plaintiff seeks information relating to the location of Adzilla's servers—the servers to which Plaintiff alleges CoreTel transmitted the personal information of Continental's internet customers.  Plaintiff also seeks information regarding where Adzilla made deals to use the acquired customer data for advertising, where Adzilla served those advertisements, the amount of data CoreTel transmitted to Adzilla, and whether, when, and where Adzilla operated from in conducting its contracted work with CoreTel.  Additionally, review of the actual data transmitted from CoreTel to Adzilla in California may reveal the extent of CoreTel's customers' electronic communications with businesses and persons in California.  By gaining access to this information, Plaintiff and the Court will be able to determine whether CoreTel is subject to the exercise of personal jurisdiction in the U.S. District Court for the Northern District of California in this matter.

If jurisdictional discovery reveals to Plaintiff's satisfaction that CoreTel is not subject to personal jurisdiction in this Court, then Plaintiff will not oppose CoreTel's motion to dismiss.

1  **II.     IF JURISDICTIONAL DISCOVERY VALIDATES PLAINTIFF'S CLAIMS, THEN**

2  **THIS COURT WILL BE ABLE TO EXERCISE PERSONAL JURISDICTION**

3  **OVER CORETEL.**

4       **A.     CoreTel has established sufficient "minimum contacts" for this Court to**

5       **exercise specific jurisdiction.**

6       To satisfy due process, a defendant must have "minimum contacts" with the forum state so

7  as not to "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v.*

8  *Washington*, 326 U.S. 310, 315 (1945).  In *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir. 1987), the

9  Ninth Circuit articulated a three-part test designed to analyze whether a defendant has the requisite

10 "minimum contacts":

11          (1)     The non-resident defendant must purposefully direct his activities or
            consummate some transaction with the forum or resident thereof; *or* perform some

12          act by which he purposefully avails himself of the privileges of conducting
            activities in the forum, thereby invoking the benefits and protections of its laws;

13          (2)     the claim must be one which arises out of or relates to the defendant's
            forum-related activities; and

14          (3)     the exercise of jurisdiction must comport with fair play and substantial
            justice, i.e. it must be reasonable.

15
       *See also Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).  Satisfying this

16
   test requires a plaintiff to "make only a prima facie showing of jurisdictional facts . . ." (*Doe v.*

17
   *Unocal*, 248 F.3d 915, 922 (9th Cir. 2001) (internal citations omitted)) and "courts are to resolve

18
   all disputed facts in favor of the plaintiff" (*Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir.

19
   2006) (citing *Unocal*)).

20
       "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to

21
   the defendant to 'present a compelling case' that the exercise of jurisdiction would not be

22
   reasonable."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)

23
   (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

24       **B.     By engaging in DPI with Adzilla in California, CoreTel has purposefully**

25       **availed itself of California law.**

26       Purposeful availment analysis gets to the heart of Plaintiff's request for jurisdictional

27 discovery.  Plaintiff seeks to discover whether Adzilla was operating in California during the time

28

1  of its co-operation with CoreTel.  Plaintiff also seeks to determine the location of Adzilla's servers

2  during the relevant time period, the location of Adzilla's advertising operations during the relevant

3  time period, and whether and how much CoreTel internet traffic was routed into and out of

4  California.  Plaintiff seeks this information because, upon information and belief, CoreTel

5  transmitted or facilitated the transmission of customer data into and out of California.  After

6  transmission into California, Adzilla, per its contract with CoreTel, analyzed and stored the data,

7  both for itself and on behalf of CoreTel.  CoreTel profited from the analysis and storage of this

8  data in California.  Thus, facts relating to the execution and performance of these contracts are

9  critical to the requisite jurisdictional analysis.

10         Plaintiff contends that the information sought will reveal that CoreTel purposefully availed

11  itself of California law.  This information will reveal the extent of CoreTel's contractually

12  obligated contacts with California.  In contract cases, a court "typically inquire[s] whether a

13  defendant purposefully avails itself of the privilege of conducting activities or consummates a

14  transaction in the forum, focusing on activities such as delivering goods or executing a contract."

15  *Yahoo! Inc. v. La Ligue Contre Le Racisme,* 433 F.3d 1199, 1206 (9th Cir. 2006) (citation and

16  internal quotation marks omitted). As the Ninth Circuit has further explained:

17
             A showing that a defendant purposefully availed himself of the privilege of doing
             business in a forum state typically consists of evidence of the defendant's actions in
18           the forum, such as executing or performing a contract there. By taking such actions,
             a defendant purposefully avails itself of the privilege of conducting activities in the
19           forum state, thus invoking the benefits and protections of its laws.  In return for
             these benefits and protections, a defendant must-as a quid pro quo-submit to the
20           burdens of litigation in that forum.

21         *Schwarzenegger,* 374 F.3d at 802 (internal citations and quotation marks omitted).

22         While there is no evidence that CoreTel executed its contract in California, Plaintiff alleges

23  that most of the wrongdoing occurred in California and that it occurred repeatedly and frequently.

24         The case of *Boschetto v Hansing*, 539 F.3d 1011 (9th Cir. 2008) is particularly instructive

25  to the present circumstances.  The court in *Boschetto* found that a single contract for sale of an

26  automobile by an Idaho resident to a California resident did not suffice to establish jurisdiction:

27
             [Defendants] did not create any ongoing obligations with Boschetto in California;
28           once the car was sold, the parties were to go their own ways.  Neither Boschetto's

Plaintiff's Motion for Leave to Conduct Jurisdictional          8                    Case No. 3:09-cv-879-MMC
Discovery

complaint nor his affidavit in opposition to dismissal point to any continuing commitments assumed by the Defendants under the contract. *Id.* Nor did performance of the contract require the Defendants to engage in any substantial business in California. On Boschetto's version of the facts, funds were sent to Wisconsin and arrangements were made to pick up the car there and have it delivered to California. This was, as the district court observed, a "one-shot affair."

*Boschetto*, 539 F.3d at 1017.

In contrast with *Boschetto,* Plaintiff alleges that CoreTel engaged in a continuous, substantial, and ongoing relationship with the California entity—Adzilla—to engage in tortious and unlawful activity. The stream of individual ISP subscriber data was intercepted and diverted with the knowing aid and assistance of CoreTel. This continuous stream of intercepted data was transmitted from CoreTel's hubs to California on a second-by-second basis, twenty-four hours a day. This data stream was transmitted twice. First, the data was intercepted and transmitted to California, where it was recorded, stored, and altered (all for the benefit of both Adzilla and CoreTel). Second, it was then transmitted back from California (again, all for the benefit of both Adzilla and CoreTel), in an unremitting, incessant, ongoing stream of communication—all of which was in furtherance of criminal activity. This "substantial activity" is a far cry from the single car sale, or a "one shot deal" from which the parties would "go their separate ways." In the instant action, the activity that is the focus of the unlawful conduct was long term, continuous, substantial, and ongoing. These relationships more than meet the test for "substantial connection with the forum." *Burger King,* 471 U.S. at 476 n.18 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

Accordingly, Plaintiff has identified substantial contacts with California by CoreTel, articulated specific facts she seeks that will demonstrate jurisdiction, identified possible locations, and articulated why she seeks these facts. Quite simply, Plaintiff has more than met her burden as it relates to the purposeful availment prong of minimum contacts analysis.

**C.     CoreTel purposefully directed conduct to California.**

Additionally and alternatively, CoreTel has purposefully directed conduct to the forum state, California, sufficient to satisfy the first prong of minimum contacts analysis.

Purposeful direction of conduct to a forum state "usually consists of evidence of the

1   defendant's actions outside the forum state that are directed at the forum, such as the distribution

2   in the forum state of goods originating elsewhere." *Schwarzenegger*, 374 F.3d at 803 (citing

3   *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-75 (1984).

4          In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980), the U.S.

5   Supreme Court stated that a "forum state does not exceed its powers under the Due Process Clause

6   if it asserts personal jurisdiction over a corporation that delivers its products into the stream of

7   commerce with the expectation that they will be purchased by consumers in the forum State."

8   This is exactly what CoreTel did with its own products (subscriber data) with Adzilla.  It

9   transmitted, pursuant to contract and in exchange for money, one of its products—the raw data of

10  users' online activities—into the forum state, California; it delivered the products (users'

11  behavioral data) into the stream of commerce with the expectation that its products would be

12  purchased by Adzilla in California.  It received the California remanufactured product (the altered

13  web pages) to deliver to internet users for which delivery CoreTel received compensation.  This

14  represents the modern day, though still quintessential, stream of commerce conduct.

15         CoreTel argues that it does not do business in California because it operates its CLEC

16  network in Pennsylvania and Maryland, but operating its CLEC network is not the only service or

17  revenue-generating activity in which it engaged.  It also sold the behavioral data of internet users

18  to Adzilla, from which CoreTel generated revenue.  By doing so, CoreTel participated in the

19  manufacture of a wholly new product: behaviorally targeted advertising.  CoreTel assisted Adzilla

20  in taking raw data and turning it into usable, targetable, and profitable behavioral snapshots of

21  individual internet users for consumption and use by advertisers.  Legally, practically, and

22  effectively, this is indistinguishable from turning raw materials into building supplies or consumer

23  goods.  Either way, a defendant is selling information/goods to a buyer in the forum state where it

24  is transformed into a new service/good and then resold for profit by the initial buyer.

25         Whether these activities satisfy the first prong of minimum contacts analysis can be seen

26  more clearly through the lens of the Calder Effects Test.  In *Calder v. Jones*, 465 U.S. 783, 788-90

27  (1984), the Supreme Court stated that the purposeful availment prong may be satisfied when a

28

1  defendant (1) committed an intentional act (2) expressly aimed at the forum state (3) causing harm

2  that the defendant knows is likely to be suffered in the forum state.

3        Looking to the first and second elements, there is no question that CoreTel committed

4  intentional acts directed at California; it contracted to profit from the transmission of internet

5  users' online behavioral data to Adzilla in California.

6        As to the third element, it is undeniably likely that the affected internet users would

7  communicate with (and harm) persons, businesses, computers, and servers in California,

8  especially given that such major sites as Facebook, Google, Yahoo!, eBay, MySpace, Craigslist,

9  and Wikipedia are all based in California. Therefore, not only did CoreTel intercept the private

10 information of Plaintiff, it intercepted the private information of California-based persons and

11 businesses that was communicated online to Plaintiff.  And the fact that these California-based

12 persons and businesses are not class members is not relevant to *Calder* analysis; the only question

13 is whether CoreTel knew that harm was likely to be suffered in California and the answer to that is

14 a resounding "yes."

15       It is not necessary that the "brunt" of the harm be suffered in the forum state.  *Yahoo!*, 433

16 F.3d at 1207 ("[i]f a jurisdictionally sufficient amount of harm is suffered in the forum state, it

17 does not matter that even more harm might have been suffered in another state.").

18       CoreTel and Adzilla intercepted all behavior and communications of Plaintiff and other

19 internet users, including the communications of California persons and businesses generated in

20 California.  For CoreTel to suggest that it could not know that the communications of California

21 persons and businesses would be intercepted is patently preposterous.  The fact is that CoreTel and

22 Adzilla's conduct would unavoidably impact (and harm) Californians.  Accordingly, the third

23 element of the Calder Effects Test is met by the instant case.

24       **D.      Plaintiff's claims arise out of CoreTel's forum-related activities.**

25       The second prong of minimum contacts analysis—that the claim must arise out of a

26 defendant's forum-related activities—requires even less analysis to conclude that Plaintiff's

27 claims arise out of CoreTel's forum-related activities.

28

1    Plaintiff's claim is that internet users suffered harm from CoreTel and Adzilla's violations

2    in California of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, the

3    Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, the California Invasion of Privacy

4    Act ("CIPA"), Cal. Penal Code § 631, the California Computer Crime Law ("CCCL"), Cal. Penal

5    Code § 502, as well as several common law violations, including Aiding and Abetting, Civil

6    Conspiracy, and Unjust Enrichment.  Plaintiff alleges that: "The geographic location from which

7    the scheme to intercept, copy, obtain, analyze, store, and alter the data of internet subscribers was

8    coordinated, launched, overseen, and implemented was the state of California."  (Compl. ¶ 81).

9    There can be no clearer case for claims arising out of forum-related activities.

10   California case law holds that intentional tortfeasors should be prepared to defend

11   themselves in any jurisdiction where they direct their tortious activity.  *Seagate Technology v. A.J.*

12   *Kogyo Co.,* 219 Cal. App. 3d 696, 703 (Ct. App. 1990) (citing *Taylor-Rush v. Multitech Corp.,*

13   217 Cal. App. 3d 103, 118 (Ct. App. 1990)).

14   CoreTel does not challenge personal jurisdiction over Adzilla.  Since the case will proceed

15   in California against this defendant, the most efficient judicial resolution would require trial in

16   California against CoreTel, as opposed to piecemeal litigation elsewhere.

17   Accordingly, Plaintiff has satisfied the first and second prong of minimum contacts

18   analysis.  This places the burden on CoreTel to "present a compelling case" that the exercise of

19   jurisdiction would be unreasonable despite Plaintiff's satisfaction of the first two prongs.  *Burger*

20   *King*, 471 U.S. at 476-78.  CoreTel presented its case in its motion to dismiss, to which Plaintiff

21   herein responds.

22           1.    *CoreTel purposefully interjected itself into California.*

23   Purposeful interjection on the part of CoreTel is readily apparent from the record. "[T]he

24   degree of interjection is a factor to be weighed in assessing the overall reasonableness of

25   jurisdiction under the reasonableness prong." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482,

26   1488 (9th Cir. 1993).  This factor is analogous to purposeful direction.  *Sinatra v. National*

27   *Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988).

28   Plaintiff's Motion for Leave to Conduct Jurisdictional       12                Case No. 3:09-cv-879-MMC
     Discovery

CoreTel purposefully interjected itself into California.  It cannot be stated more simply: by partnering with Adzilla, CoreTel put the data of its ISP partners' internet customers up for sale, both *in* the state of California and *from* the state of California.  This data was not put up for sale in any state other than California.  The subscribers, through their clickstream data, were analyzed and turned into a marketing commodity in California.  What advertisements the subscribers viewed was controlled from California.  And when they viewed those advertisements or made purchase decisions based on those advertisements, the transactions were completed in and money was collected in California.  On these facts, the Court must find purposeful interjection by CoreTel and weigh this factor in favor of Plaintiff.

2.     *CoreTel faces no burden litigating in California.*

The burden on CoreTel in litigating in California is minimal.  "A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justification for the exercise of jurisdiction.'" *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128-29 (9th Cir. 1995)). In this era of email and discount air travel, the burden of litigating over distance is considerably lessened.  *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990).

CoreTel cannot credibly claim that litigating in San Francisco, California poses a great burden.  CoreTel has retained attorneys in California who are versed in this matter and in local civil practice. The California Northern District Court specifically allows electronic filing for all papers, which can be done from any location in the United States. The critical witnesses and documents relating to the violations complained of are located in Brisbane, California, making them readily available to CoreTel's counsel. To require this action to be filed in Virginia or Washington, D.C. would make no sense, as the causes of action arise directly from the conduct perpetrated here in California and involve actors, witnesses and documents that are located in California.  This Court should weigh this factor in Plaintiff's favor accordingly.

CoreTel has availed itself of California law by conducting business in the state of

California through the monetization and sale of information about internet users.  It has engaged in actual contracts with California businesses to display profitable advertising on the web pages viewed by its ISP partners' customers.  The majority of harm that has been done—the promotion and marketing and sale of behavioral data that neither the ISPs nor Adzilla had the right to sell—occurred through CoreTel and Adzilla's acts in California.

          3.     *No Conflicts with Other Sovereigns*.

There exist no conflicts with any other sovereign with regard to litigating Plaintiff's claims against CoreTel in California.  Plaintiff's federal claims will be resolved under well-settled federal law.  The California claims will and would be litigated against defendants in any jurisdiction this matter is litigated in.

California's Computer Crime Law, Penal Code § 502 contains cross-jurisdiction application, such that, whatever location the act or acts are alleged to have occurred in, if any part of the unauthorized access involves California (which this case indisputably does), then the CCCL is implicated regardless.   Further, primary liability is applicable against secondary actors under this statute: e.g., "(6) Knowingly and without permission *provides or assists in providing* a means of accessing a computer, computer system, or computer network in violation of this section." (Emphasis added.)

California's Invasion of Privacy Act, Penal Code § 631 et seq., provides for primarily liability under the Act against secondary actors, ("or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section . . ."), and includes "communications . . . being sent from . . . this state."  The complained of acts:  a) took place in California; b) affected business and websites in California; and c) threatened the privacy rights of Californians.

The jurisdictional questions do not, therefore, raise any conflict issues with respect to the causes and conduct complained of.  As such, this factor, like the others, leans towards Plaintiff.

          4.     *California's interest in adjudicating this matter is strong*.

This state has a powerful interest in providing a forum for Plaintiff's claims.  The threats to

1   privacy that DPI holds for Californians, in general, are profound.   Specifically, it was a

2   California-based entity that developed and implemented the technology that permitted the

3   complained-of DPI to occur on a wholesale scale—affecting thousands of users in what have been

4   described as test runs.  More specifically, however, the fruits of that unlawful activity were

5   processed, packaged, marketed, sold, and profited from in California.  Indeed, on information and

6   belief, California companies, both local advertisers of products and services, as well as California-

7   based internet webpage destinations owners were engaged in the trade and profit-making use of

8   the unlawful data.  In short, California is the situs of the Plaintiff's injuries.  Thus, the effects of

9   the venture created by Adzilla and CoreTel are felt most strongly here in California.

10          5.   *California offers the most efficient judicial resolution.*

11          Resolution of all claims in a single forum having jurisdiction over all parties would be the

12   best and most efficient use of judicial resources.  No other state or sovereign offers the efficiency

13   of California. The predominant location of evidence and witnesses is the focus of this fifth factor

14   in the analysis of whether the exercise of personal jurisdiction is reasonable. *Panavision*, 141 F.3d

15   at 1323.

16          With Adzilla's headquarters, center of operations, and all associated documents, witnesses,

17   and records here in California, this factor tips sharply in Plaintiff's favor.  These individuals and

18   materials will provide critical testimonial and documentary evidence in support of Plaintiff's

19   claims.   If CoreTel's motion to dismiss on jurisdictional grounds is granted, such a result would

20   likely force Plaintiff to launch parallel litigation against it in multiple states, thereby dispensing

21   with any notion of efficiency (since the conduct complained of is nearly identical with respect to

22   all defendants).  Compared to California, the multiple states suggested by the various pending

23   motions to dismiss offer no judicial efficiencies, and would only result in the imposition of

24   significant burdens on all concerned persons, including all of the third-party witnesses, many of

25   whom are in California.  See *Pacific Atlantic Trading, Co. v. M/V Main Express (Pacific)*, 758

26   F.2d 1325, 1331 (9th Cir. 1985) ("The site where the injury occurred and where evidence is

27   located usually will be the most efficient forum.").

28   Plaintiff's Motion for Leave to Conduct Jurisdictional          15                    Case No. 3:09-cv-879-MMC
     Discovery

1    This factor tips sharply in Plaintiff's favor.  Local individuals and materials will provide

2    critical testimonial and documentary evidence in support of Plaintiff's claims.

3                6.        *Maintaining litigation outside California would greatly burden Plaintiff.*

4    Maintaining litigation in multiple jurisdictions would be prohibitively expensive and

5    burdensome for Plaintiff, as it would require as many as four separate trials on the same set of

6    facts, with testimony from the same witnesses needing to be rehashed multiple times, each in a

7    different courtroom in a different state.  CoreTel already has California Counsel and has availed

8    itself of California jurisdiction by engaging in profit-making businesses and activities in this state.

9    This factor greatly favors Plaintiff.

10                7.        *No alternative forum.*

11    The final factor, the availability of an alternate forum, likewise weighs in Plaintiff's favor.

12    Although CoreTel presumably believes that this lawsuit should have been filed in a myriad of

13    alternative jurisdictions, "whether another reasonable forum exists becomes an issue only when

14    the forum state is shown to be unreasonable." *Sinatra*, 854 F.2d at 1201 (citation omitted). In this

15    case, CoreTel cannot show that exercise of jurisdiction in this forum would be unreasonable.

16    Taking all of the factors as a whole, CoreTel has failed to make "a compelling case" that

17    the exercise of specific jurisdiction is so unreasonable as to violate due process.

18    CoreTel contracted to profit from the operations of, sales from, and monetizing activities

19    with Adzilla, which operates out of its office in Brisbane, California.   It would be inconsistent for

20    CoreTel to avail itself of all of the benefits of the activities that took place in California, but

21    disengage itself from the consequences of abusing and/or misusing the conduit by which it

22    committed the acts giving rise to this action.

23    What should now be clear is that Plaintiff has fully met her burden to demonstrate the

24    reasonableness and propriety of jurisdictional discovery.  As a result, Plaintiff has demonstrated

25    everything necessary—and then some—to allow this Court to exercise its broad discretion to

26    allow Plaintiff to engage in limited jurisdictional discovery.

27

28

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully asks that the Court: 1) grant Plaintiff leave to conduct immediate jurisdictional discovery for the limited purpose of determining whether the Court may exercise personal jurisdiction over defendant CoreTel; 2) stay CoreTel's Motion to Dismiss; and, 3) grant such further relief the Court deems reasonable and just.

Dated: June 19, 2009                   Michael J. Aschenbrener
                                       KAMBEREDELSON, LLC

                                       By:    s/ Michael J. Aschenbrener
                                              Attorney for Plaintiff

1

2

**PROOF OF SERVICE**

3

     The undersigned certifies that, on June 19, 2009, he caused this document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to counsel of record for each party, listed below:

4

5          Joseph Edward Addiego, III
          Michael J. Aschenbrener

6          Gavin Lewis Charlston
          Alan Himmelfarb

7          Joseph H. Malley
          Beatriz Mejia

8          Owen J. Rescher
          Michael G. Rhodes

9          Rocky N. Unruh

10

11                                         s/ Michael J. Aschenbrener
                                        Michael J. Aschenbrener

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
| Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery | 18 | Case No. 3:09-cv-879-MMC |
| --- | --- | --- |

ALAN HIMMELFARB- SBN 90480
KAMBEREDELSON, LLC
2757 Leonis Boulevard
Los Angeles, California 90058
t: 323.585.8696
f: 323.585.6195
ahimmelfarb@kamberedelson.com

JOSEPH H. MALLEY (*admitted pro hac vice*)
Law Office of Joseph H. Malley, PC
1045 North Zang Boulevard
Dallas, TX 75208
214-943-6100
malleylaw@gmail.com

*Attorneys for Plaintiff*
SUSAN SIMON and the putative class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SUSAN SIMON, individually, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ADZILLA, INC.; CONDUCIVE CORPORATION; CONTINENTAL VISINET BROADBAND, INC.; CORE COMMUNICATIONS, INC. d/b/a CORETEL COMMUNICATIONS, INC. et al.<br><br>Defendants. | Case No.: C09-00879-MMC<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT JURSIDICTIONAL DISCOVERY**<br><br>Date:      July 31, 2009<br>Time:     9:00 a.m.<br>Judge:    The Hon. Maxine M. Chesney |

1    On February 27, 2009, Plaintiff filed the present class action complaint alleging violations

2    of the federal Electronic Communications Privacy Act ("ECPA") and Computer Fraud and Abuse

3    Act ("CFAA"), as well as state law claims under the California Invasion of Privacy Act ("CIPA")

4    and California Computer Crime Law ("CCCL"), among other claims against Adzilla, Conducive

5    Corp., Continental Visinet Broadband, and CoreTel Communications, Inc.

6    For the following reasons, the Court finds that Plaintiff may conduct immediate

7    jurisdictional discovery to determine whether defendant CoreTel is subject to this Court's exercise

8    of personal jurisdiction over it.  The Court also hereby stays the CoreTel Motion to Dismiss the

9    parties complete jurisdictional discovery.

10    "Where pertinent facts bearing on the question of jurisdiction are controverted . . . or where

11    a more satisfactory showing of the facts is necessary courts should allow for discovery." *Wells*

12    *Fargo*, 556 F.2d at 430 (internal quotation marks omitted); *America West Airlines, Inc. v. GPA*

13    *Group, Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989).

14    In the instant matter, defendant CoreTel submitted a motion to dismiss stating, in relevant

15    part, that it is not subject to personal jurisdiction in this Court because it does not conduct

16    substantial business in California.  Plaintiff, though, alleges that CoreTel has conducted significant

17    business in California through its business dealings with co-defendant Adzilla.

18    Because CoreTel has introduced a factual dispute bearing on the matter of jurisdiction, this

19    Court finds that Plaintiff may conduct immediate written and oral discovery limited to determining

20    whether defendant CoreTel is subject to the exercise of personal jurisdiction over it in this Court.

21    The Court further finds that the CoreTel Motion to Dismiss is stayed pending the conclusion of

22    Plaintiff's jurisdictional discovery.

23    Plaintiff's motion for leave to conduct immediate jurisdictional discovery is granted.

24    DATED: _____

25

26    By: _____
        Hon. Maxine M. Chesney
        United States District Court

27

28    [PROPOSED] ORDER GRANTING PLAINTIFF'S          1          Case No. 3:09-cv-879-MMC
      MOTION FOR LEAVE TO CONDUCT
      JURSIDICTIONAL DISCOVERY